IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | |
| : | Case No. 20-22898-CMB |
| RONALD G. LINABURG, : | |
| : | Chapter 11 |
| Debtor. : | |
| : | |
| RONALD G. LINABURG, : | Related to Doc. No. 168 |
| : | |
| Movant, : | |
| : | |
| v. : | |
| : | Hearing Date: May 12, 2021 at 2:30 p.m. |
| DIANA MARIE DONGELL, D.M.D.; : | |
| RONALD E. HAND, D.M.D.; : | |
| REBECCA L. WATKINS, D.M.D; and : | |
| RENEE R. KALP, D.M.D., : | |
| : | |
| Respondents. : | |

## OBJECTION TO DISCLOSURE STATEMENT

Diana Marie Dongell, D.M.D., Ronald E. Hand, D.M.D., Rebecca L. Watkins, D.M.D., and Renee R. Kalp, D.M.D. (the "**Minority Shareholders**") file this Objection to Disclosure Statement and state as follows.

### BACKGROUND

1. On October 9, 2020, the Debtor, Ronald G. Linaberg, D.M.D. ("**Debtor**"), filed his voluntary petition for relief (the "**Petition**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**"), at the above-captioned case number (the "**Bankruptcy Case**").

2. The Debtor and the Minority Shareholders are shareholders and joint owners of a dental practice known as Associated Dental Specialists, Inc. ("**Associated Dental**").

3. Associated Dental is owed as follows:

| SHAREHOLDER | % OF SHARES OWNED |
|---|---|
| Ronald G. Linaberg | 60.8% |
| Diana Marie Dongell | 9.2% |
| Ronald Hand | 9.2% |
| Rebecca Watkins | 9.2% |
| Renee Kalp | 9.2% |

4. Debtor is the majority shareholder, President, and sole director of Associated Dental.

5. On January 3, 2021, the Debtor filed his amended Schedule C, wherein he claims over $4,500,000.00 in liquid assets as exempt from the reach of his creditors. [Doc. No. 75.]

6. The United States Trustee conducted and concluded a section 341 meeting of creditors on January 13, 2021. [*See* Doc. No. 81.]

7. On February 23, 2021, the United States Trustee filed the Motion of the United States Trustee to Dismiss Debtor's Case Pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, to Convert the Case to Chapter 7, asserting that cause exists to dismiss the Bankruptcy Case because of the Debtor's excessive expenses leading to diminution of the bankruptcy estate, the unlikelihood that the Debtor can propose a confirmable plan of reorganization, and gross mismanagement of the estate. [Doc. No. 119.]

8. On March 10, 2021, the Minority Shareholders filed their Motion for Leave to File Objection to Exemptions and Motion to Extend Time to Object to Dischargeability and/or Discharge. [Doc. Nos. 134 and 135, respectively.] Both motions remain pending before the Court at this time.

9. Each Minority Shareholder filed a proof of claim on April 7, 2021, as amended on May 3, 2021, at Claim Nos. 11, 12, 13, and 14 on the Claims Register. The proofs of claim set forth an unliquidated claim based upon damage asserted in litigation currently pending against

Associated Dental in the Court of Common Pleas of Allegheny County at Case GD-21-001958 and captioned *Dongell, et al. v. Associated Dental Specialists, Inc.* The Debtor filed an objection to each claim on April 30, 2021, and a hearing to consider the objections is set for June 10, 2021.

10. The Debtor filed his Disclosure Statement (the "**Disclosure Statement**") and Amended Chapter 11 Plan of Reorganization (the "**Plan**") on March 29, 2021. [Doc. Nos. 168 and 167, respectively.]

11. On, April 29, 2021, the Minority Shareholders and the Debtor filed a joint stipulation to extend the deadline by which the Minority Shareholders could file an objection to the Disclosure Statement, and the Court extended that deadline to May 10, 2021. [Doc. Nos. 195 and 196.]

12. A hearing to consider approval of the Disclosure Statement is scheduled before this Court on May 12, 2021 at 2:30 p.m. [Doc. No. 170.]

13. The Minority Shareholders now file this objection to approval of the Debtor's Disclosure Statement for the reasons that follow.

## OBJECTIONS TO DISCLOSURE STATEMENT

**I.     The Disclosure Statement cannot be confirmed because it fails to provide adequate information to creditors.**

14. Section 1125 of the Bankruptcy Code governs the requirements for disclosure statements in chapter 11 cases and provides, in relevant part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing by the court as containing adequate information.

11 U.S.C. § 1125(b) (emphasis added).

15. Section 1125 defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible proposed plan.

11 U.S.C. § 1125(a)(1); *see also In re Scott*, 172 F.3d 959 (7th Cir. 1999); *In re Bloomingdale Partners*, 155 B.R. 961 (Bankr. N.D. Ill. 1993); *In re Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988).

16. There is no global standard for determining adequate information as set forth in section 1125. Rather, bankruptcy courts review disclosure statements on a case-by-case basis. *In re Diversified Investors Fund XVII*, 91 B.R. 559 (Bankr. C.D. Cal. 1988).

17. While the full scope of adequate information for making an informed judgment is tailored to the particular case, there is nevertheless, an irreducible minimum. *In re H.B. Michelson*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992).

18. A disclosure statement fails to satisfy the "adequate information" standard unless, at a bar minimum, it provides specific information including, *inter alia*:

    a. A description of the debtor's business,

    b. A summary of the debtor's pre-petition history,

    c. Financial information about the debtor's operations,

    d. A description of the proposed plan and how it will be implemented, and

    e. A liquidation analysis.

*See, e.g., In re The A.C. Williams Co.*, 25 B.R. 173 (Bankr. N.D. Oh. 1982).

19. Here, the Disclosure Statement provides misleading and incomplete information regarding the Debtor's financial situation.

20. In Section I.3, the Debtor states that he is "disabled and retired" and is currently "not employed." This is misleading in that the Debtor is still active as the majority shareholder, President, and sole director of a six-office endodontics dental practice, Associated Dental, and continues to "manage" the daily operations of the business.

21. Next, the Disclosure Statement values the Debtor's interest in Associated Dental at $10,000. The Disclosure Statement fails to provide any further information about Associated Dental, including whether the Debtor receives any additional compensation or benefits from Associated Dental based on his role as the majority shareholder, President, and sole director of the same.

22. Upon information and belief, prior to 2020, Linaburg caused himself to be paid a 10% management fee from Associated Dental, which generates income of at least $500,000 annually and was used to pay his own personal credit card debt, his daughter's medical school tuition, his personal legal fees, and other personal expenses of more than $500,000 on an annual basis.

23. Furthermore, the Disclosure Statement fails to include any reference to the dispute between the Debtor and the Minority Shareholders. To date, the Debtor has filed an objection to the proof of claim filed by each Minority Shareholder and such objections remain pending. The Disclosure Statement does not include a statement of these claims and how the success or failure of the Debtor's objection thereto could impact the Plan and its funding.

24. Next, as outlined by Dollar Bank in its Objection to Disclosure Statement, the Debtor provides only five months of cash flow data to his creditor through the Disclosure Statement. [*See* Doc. No. 190 at ¶¶ 30–35.]

25. These five months of data, along with the Debtor's monthly operating reports, show that, essentially, the Debtor's sole source of income since the Petition Date have been substantial withdrawals from his investment account. The monthly operating reports show, of the $207,840 of income reported to date, all but $2,840 came from such withdrawals.

26. If not for the increasing withdrawals from his investment account, it appears that the Debtor would be unable to pay his current expenses and the estate would be insolvent.

27. Creditors are entitled to more than five months of financial data to make an informed decision on the feasibility and success of the Plan.

28. For these reasons, the Disclosure Statement therefore does not contain the "adequate information" required by section 1125 of the Bankruptcy Code, and this Court should refuse to approve it. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inv. v. General Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) ("[W]e cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information"); *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 610 (Bankr. E.D. Va. 1985); *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (emphasizing that disclosure statement should not be approved if it fails to provide sufficient information about risks regarding the means by which a plan is to be funded); *see also In re CRIIMI MAE, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000) ("'It is now well accepted that a court may disapprove of a disclosure statement, even it provides adequate information about a proposed plan, if the plan could not possibly be confirmed'")

(quoting *In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999)); *In re Phoenix Petroleum, Inc.*, 278 B.R. 385, 393-94 (Bankr. E.D. Pa. 2001).

## II. The Disclosure Statement cannot be confirmed because it fails to provide for the treatment of all allowed secured claims.

29. As further explained in Dollar Bank's Objection to Disclosure Statement, the Disclosure Statement fails to provide for the treatment of three secured, allowed claims filed by Dollar Bank.

30. The proofs of claim filed by Dollar Bank indicate that the amount of such obligations are as follows:

| Claim No. 7 | $2,741,449.20 |
| Claim No. 8 | $100,000.00 |
| Claim No. 9 | Right to draw on $474,355.23 letter of credit |

31. Incorporating these three obligations into the Plan nearly doubles the amounts to be paid through the Plan to secured creditors, thereby diluting—if not eliminating—the funds available for distribution to general unsecured creditors.

32. The failure of the Disclosure Statement to properly account for Claim Nos. 7, 8, and 9 of Dollar Bank misrepresents the estimated dividend to general unsecured creditors including the Majority Shareholders and, as such, does not provide adequate information of the Debtor's financial situation.

## III. The Disclosure Statement cannot be approved because the underlying Plan was proposed in bad faith.

33. Under § 1129(a)(3) of the Bankruptcy Code, "[t]he court shall confirm a plan only if . . . [t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

34. The Third Circuit has found it appropriate to "consider a debtor's substantial earnings and lavish lifestyle as evidence of a debtor's bad faith." *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364, 373 (3d Cir. 2007) (finding such factors as evidence of bad faith in the context of a debtor's filing of a bankruptcy petition).

35. Here, the Debtor is utilizing estate assets to fund not only his lavish lifestyle, but also that of his wife and adult children. There is no evidence that the Debtor has attempted to reduce or otherwise alter his expenditures after filing this case. The monthly operating reports filed in this case show that the extravagant expenses actually increased for at least the first four months of the case.

36. Such extravagant expenses—the majority of which are non-essential—are rapidly depleting the funds that would otherwise be available to pay his creditors.

**V.    Reservation of Rights**

37. The Minority Shareholders reserve all of their rights, including the right to object to any modifications or amendments to the Disclosure Statement, and to raise additional objections at the hearing to consider the same.

38. The Minority Shareholders are not addressing any objections to confirmation of the Plan, which they will raise at the appropriate time.

WHEREFORE, Diana Marie Dongell, D.M.D., Ronald E. Hand, D.M.D., Rebecca L. Watkins, D.M.D., and Renee R. Kalp, D.M.D. respectfully request that this Honorable Court issue

an Order denying approval of the Debtor's Disclosure Statement and granting such other and further relief as the Court deems just and proper.

                                                    Respectfully submitted,

Dated:  May 10, 2021                  TUCKER ARENSBERG, P.C.

                                                    */s/ Michael A. Shiner*
Michael A. Shiner, Esquire
PA ID No. 78088
mshiner@tuckerlaw.com

Maribeth Thomas, Esquire
PA ID No. 208376
mthomas@tuckerlaw.com
1500 One PPG Place
Pittsburgh, Pennsylvania  15222
Phone:  412-566-1212

*Counsel for Diana Marie Dongell, D.M.D., Ronald E. Hand, D.M.D., Rebecca L. Watkins, D.M.D., and Renee R. Kalp, D.M.D.*