**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : |  |
|  | : | Case No. 20-22898-CMB |
| RONALD G. LINABURG, | : |  |
|  | : | Chapter 11 |
| Debtor. | : |  |
|  | : | Related to ECF # 314 |
| RONALD G. LINABURG, | : | Related Claim No. 11-2 |
|  | : |  |
| Plaintiff, | : |  |
|  | : | The Honorable Carlotta M. Böhm |
| v. | : | Chief Bankruptcy Judge |
|  | : |  |
| DIANA M. DONGELL, D.M.D.; | : | Hearing Date: October 14, 2021 at 2:30 p.m. |
| RONALD E. HAND, D.M.D.; REBECCA | : | Response Deadline: September 13, 2021 |
| L. WATKINS, D.M.D.; and RENEE R. | : |  |
| KALP, D.M.D., | : |  |
|  | : |  |
| Defendants | : |  |

## RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 11-2

Creditor, Diana Marie Dongell, D.M.D. ("**Dongell**"), by and through her undersigned counsel, respectfully submits the within Response in Opposition to Debtor's Objection to her Amended Proof of Claim No. 11-2 (ECF # 314), and in support thereof, states the following:

1.      Ronald G. Linaburg, D.M.D. (the "**Debtor**") is the majority shareholder, President and sole director of Associated Dental Specialists, Inc. ("**ADS**"). In such capacity, since the beginning of Dongell's employment with ADS, Debtor has held complete control and discretion over the finances and expenses of ADS, to the severe detriment of Shareholder Creditor.

2.      Dongell is one of four minority shareholders of ADS, owning 9.2% of its shares. The three other minority shareholders are Creditors Renee Kalp, D.M.D., Rebecca L. Watkins, D.M.D., and Ronald E. Hand, D.M.D. (together with Dongell, the "**Minority Shareholders Creditors**").

3.      On October 9, 2020, Debtor filed his voluntary petition for relief (the "**Petition**")

under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "**Bankruptcy**

**Code**") at the above-captioned case number (the "**Bankruptcy Case**").

4.      On March 8, 2021, the Minority Shareholder Creditors filed a Petition Seeking

Order Compelling Inspection of Company Books and Records and Appointment of a Custodian

for the Company (the "**Petition**), as amended on March 9, 2021, against ADS in the Court of

Common Pleas of Allegheny County at Case No. GD-21-001958 (the "**State Court Action**").

5.      Dongell filed her original Proof of Claim No. 11 on April 13, 2021(Claim No # 11-

1). Dongell filed an Amended Claim on May 3, 2021 (Claim No. 11-2, "Claim"), setting forth her

unsecured claim against Debtor arising out of his fraud and defalcation in his gross

mismanagement of the practice of ADS. (*See* Addendum to Proof of Claim No. 11-1). A copy of

the Petition in the State Court Action was attached to the Claim.

6.      The Debtor's Objection to the Claim asserts that (1) the Claim is unsubstantiated

because Dongell failed to attach the Minority Shareholder's Employment Agreement (the "**MS**

**Agreement**"), and (2) the Claim is based upon a "vague assertion of some unsupported fraud, of

which Debtor vehemently denies."  (ECF # 314, at ¶¶ 9, 15.]

7.      For the following reasons, the Objection should be overruled.

## STANDARD OF LAW

8.      A proof of claim filed in a bankruptcy case is deemed allowed unless a party in

interest objects to such claim.  11 U.S.C. § 502(a).

9.      Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "**Rule(s)**") governs

the filing of proofs of claim.

10.     "A proof of claim which comports with the requirements of Bankruptcy Rule 3001(f) constitutes *prima facie* evidence of the validity and amount of the claim." *In re Brown*, 82 F.3d 801, 805 (8th Cir. 1996); *In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012). "The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence." *In re Brown*, 82 F.3d at 805; *In re Brown*, 244 B.R. 603, 609-10 (Bankr. W.D. Va. 2000).

11.     To rebut the presumptive validity of a proof of claim, the objecting party must set forth "substantial evidence" and the burden of production then shifts back to the claimant. *In re Brown*, 82 F.3d at 805.

12.     Once the burden is shifted, the claimant must satisfy the evidentiary requirements of non-bankruptcy law that originally governed the claim. *Raleigh v. Illinois Dept. of Rev.*, 530 U.S. 15, 120 S.Ct. 1951, 1956 (2000).

13.     Rule 3001 does not require that a claim be filed with specificity or precision; instead, the proof of claim merely "must contain a demand by the creditor against the debtor's estate, and an intent to hold the debtor's estate liable." *Liakas v. Creditors' Committee*, 780 F.2d 176, 178 (1st Cir. 1986).

## RESPONSE TO OBJECTION

14.     Dongell's Claim complies with Rule 3001 as it sets forth a demand against Debtor's bankruptcy estate and an intent to hold the estate liable for that demand.

15.     At the time that the Claim was filed, the amount of the Claim was unknown, as it was based upon damages asserted in the State Court Action and an investigation that was ongoing through the request for and production of documents in that matter.

3

16.    The demand for an unliquidated amount was based upon the allegations set forth against ADS in the Petition, and those allegations are summarized and referenced in the Addendum attached to the Claim. (*See* Addendum to Proof of Claim No. 11-1)

17.    Since the Claim was filed, some of ADS's corporate books and documents were produced by ADS to the Minority Shareholders. Based on the review of that information currently available, it has become apparent Debtor has used and/or is using the finances of ADS to fund and pay for his legal fees entirely unrelated to ADS, and the excessive living expenses for himself, his wife and his adult children, among other things. The corporate records of ADS produced thus far to the Minority Shareholders reveal that ADS's finances, by and through Debtor and its Business Manager John  Hischar, have been severely and seriously mismanaged.

18.    Dongell employed a forensic accountant to calculate the amount of the damages asserted in the State Court Action. Based upon the forensic accountant's review of the relevant financial records of ADS presently available to Dongell as produced in litigation, Dongell is now able to assert that the actual amount of the Claim is at least $200,000.00 and likely much more, plus the reasonable costs and attorney's fees incurred in the State Court Action. A copy of the amended Claim that will be filed concurrently with this Response is attached hereto as **Exhibit "A"**.

19.    Though the Debtor tries to argue that the failure of Dongell to attach the MS Agreement is a fatal flaw that Dongell should be precluded from correcting, Debtor is (and should be) in actual possession of the MS Agreement because, importantly, he is a party to that agreement and directed its preparation, and the agreement remains in his possession as the President of ADS.

20.    Furthermore, it is the Petition—not the MS Agreement—on which the Claim is based. The Petition sets forth the allegations of mismanagement, fraud, and oppression against

ADS. The MS Agreement, if not presently and readily accessible in the Debtor's records (which it is), could be obtained through proper discovery in the State Court Action, which the Debtor has caused to be delayed on numerous occasions through his improper attempts to expand the scope of the automatic bankruptcy stay to non-debtor ADS.

21.    For the foregoing reasons, the Objection to Dongell's Claim No. 11 should be overruled.

WHEREFORE, Creditor, Diana Marie Dongell, D.M.D., respectfully requests that this Honorable Court issue an Order overruling the Debtor's Objection to Proof of Claim No. 11, and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 13, 2021                    PORTER WRIGHT MORRIS & ARTHUR LLP

*/s/ Ronald L. Hicks*
Ronald L. Hicks, Jr., Esquire
Pa. I.D. No. 49520
RHicks@porterwright.com
Carolyn B. McGee, Esquire
Pa. I.D. No. 208815
CBMcGee@porterwright.com
6 PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500

*Counsel for Shareholder Creditor Diana Marie Dongell, D.M.D.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Bankruptcy No. 1:20-22898-CMB |
| | : | |
| RONALD G. LINABURG, | : | Chapter 11 |
| | : | |
| Debtor. | : | The Honorable Carlota M. Böhm |
| | : | Chief U.S. Bankruptcy Judge |

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald L. Hicks, Jr., Esquire, hereby certify that, on the 13th day of September, 2021, I

served or caused to be served a true and correct copy of the foregoing document upon all parties

in interest via the Court's electronic CM/ECF notification system, and upon the following parties

via First Class U.S. Mail, postage prepaid:

Ronald G. Linaburg
924 Valleyview Road
Pittsburgh, PA 15243
*Debtor*

Brian C. Thompson, Esquire
Thompson Law Group, P.C.
125 Warrendale Bayne Road, Suite 200
Warrendale, PA 15086
*Debtor's Counsel*

Jodi L. Hause, Esquire
Office of the United States Trustee
1001 Liberty Avenue, Suite 970
Pittsburgh, PA 15222
*United States Trustee*

Dated: September 13, 2021              PORTER WRIGHT MORRIS & ARTHUR LLP


*/s/ Ronald L. Hicks*
Ronald L. Hicks, Jr., Esquire
Pa. I.D. No. 49520
RHicks@porterwright.com

Carolyn B. McGee, Esquire
Pa. I.D. No. 208815
CBMcGee@porterwright.com

6 PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500

*Counsel for Defendant Diana Marie Dongell, D.M.D.*

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

**Official Form 410**

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | _____<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | **Has this claim been acquired from someone else?** | ☐ No<br>☐ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name _____ | Name _____ |
| Number        Street | Number        Street |
| City                State        ZIP Code | City                State        ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☐ No<br>☐ Yes.  Claim number on court claims registry (if known) _____       Filed on _____<br> MM  /  DD  / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☐ No<br>☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☐ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                          $_____

**Amount of the claim that is secured:**       $_____

**Amount of the claim that is unsecured:**  $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**      $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**      $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  _____
                   MM  /  DD  /  YYYY


_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        _____
            First name                Middle name                Last name

Title       _____

Company     _____
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     _____
            Number          Street

            _____
            City                              State      ZIP Code

Contact phone  _____      Email  _____

# ADDENDUM TO PROOF OF CLAIM
## OF DIANA MARIE DONGELL, D.M.D.

The Claim held by Diana Marie Dongell, D.M.D. (the "**Minority Shareholder**") arises from her positions as a minority shareholder of Associated Dental Specialists, Inc. ("**Associated Dental**") and her claim against Ronald G. Linaburg (the "**Debtor**") in his role as the majority shareholder of Associated Dental.

The Claim is based upon the Minority Shareholder's good faith belief that the Debtor, as the Majority Shareholder of Associated Dental, committed fraud and defalcation in his gross mismanagement of the practice. The Minority Shareholder believes and avers that the Debtor calculated Associated Dental's deductions for expenses in violation of the agreed formulation for setting the deduction amounts set forth in the Minority Shareholder's Employment Agreement and that the Debtor also improperly added his own personal expenses—solely related to his personal activities and involvement in litigation unrelated to Associated Dental and the Minority Shareholder—to the expenses of Associated Dental to create increased deductions, thereby decreasing the income awarded to the Minority Shareholder under the Employment Agreement. In addition to improperly inflating the expenses of Associated Dental, the Minority Shareholder also believes and avers that the Debtor directed corporate opportunities to himself and that such conduct further reduced the income of the Minority Shareholder and detrimentally impacted her finances.

As of the date of its filing, the amount of the Claim is unknown. Additional investigation, which is currently ongoing, is necessary to determine the amount of the Claim. The Minority Shareholder and other minority shareholders filed a Petition Seeking an Order Compelling Inspection of Company Books and Records and Appointment of a Custodian for Associated Dental at GD No. 21-001958 in the Court of Common Pleas of Allegheny County (the "**Custodian Action**"), which is attached hereto as **Exhibit "A"**. The Custodian Action outlines certain misconduct by the Debtor which the Minority Shareholder believes give rise to the Claim against Debtor.

The Minority Shareholder reserves the right to amend her Proof of Claim as necessary, or if appropriate, to amend, revise or correct the amount and/or details of the claim set forth herein and/or to include any and all other claims which the Minority Shareholder may have now or hereafter hold against the Debtor's bankruptcy estate and/or the Debtor, including without limitation, any administrative or other claims, fees and expenses, professional fees and expenses, and the right to seek such appropriate relief as may be just in connection with any hearing or trial pertaining to this claim. Nothing contained herein shall be deemed a waiver of any rights that the Minority Shareholder has or may have.

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ ALLEGHENY _____ **County**

| For Prothonotary Use Only: |
|---|
| Docket No: |

*TIME STAMP*

*The information collected on this form is used solely for court administration purposes.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- [ ] Complaint
- [ ] Writ of Summons
- [ ] Transfer from Another Jurisdiction
- [ ] Petition
- [ ] Declaration of Taking

Lead Plaintiff's Name:
Diana Marie Dongell, DMD et al.

Lead Defendant's Name:
Ronald G. Linaburg, DMD et al.

**Are money damages requested?** [ ] Yes   [ ] No

Dollar Amount Requested:
(check one)
- [ ] within arbitration limits
- [ ] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes   [ ] No

**Is this an *MDJ Appeal*?** [ ] Yes   [ ] No

Name of Plaintiff/Appellant's Attorney:  Mark A. Eck, Esquire
- [ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case**:   Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.**  If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____
  _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____
  _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____
  _____

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
  _____
  _____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
  _____
  _____

- [ ] Other: _____
  _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____
  _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
  _____
- [ ] Zoning Board
- [ ] Other: _____
  _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____
  _____

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

DIANA MARIE DONGELL, D.M.D., RONALD E. HAND, D.M.D., REBECCA L. WATKINS, D.M.D., and RENEE R. KALP, D.M.D,

       Plaintiffs,

  v.

RONALD G. LINABURG, D.M.D, and ASSOCIATED DENTAL SPECIALISTS, INC., a Pennsylvania corporation,

       Defendants.

CIVIL DIVISION

No.

**PETITION SEEKING ORDER COMPELLING INSPECTION OF COMPANY BOOKS AND RECORDS AND APPOINTMENT OF A CUSTODIAN FOR THE COMPANY**

Filed on Behalf of Plaintiff:

DIANA MARIE DONGELL, D.M.D., RONALD E. HAND, D.M.D., REBECCA L. WATKINS, D.M.D. and RENEE R. KALP, D.M.D

**NOTICE TO PLEAD:**

To Defendants:

You are hereby notified to file a written response to the within Petition within 20 days from service hereof or a judgment may be entered against you.

    ___/s/ Mark A. Eck_____
Mark A. Eck, Esquire

Counsel of Record for This Party:

Mark A. Eck, Esquire
Pa. I.D. No. 34613
meck@tuckerlaw.com

Michael A. Cassidy, Esquire
Pa. I.D. No. 26351
mcassidy@tuckerlaw.com

Michael A. Shiner, Esquire
Pa. I.D. No. 78088
mshiner@tuckerlaw.com

TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
(412) 594-3930

TADMS:5471561-1 035921-190522

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

DIANA MARIE DONGELL, D.M.D., RONALD         CIVIL DIVISION
E. HAND, D.M.D., REBECCA L. WATKINS,
D.M.D., and RENEE R. KALP, D.M.D,               No.

       Plaintiffs,

  v.

RONALD G. LINABURG, D.M.D., and
ASSOCIATED DENTAL SPECIALISTS, INC., a
Pennsylvania corporation,

       Defendants.

## PETITION SEEKING ORDER COMPELLING INSPECTION OF COMPANY BOOKS AND RECORDS AND APPOINTMENT OF A CUSTODIAN OF THE COMPANY

NOW COME Plaintiffs, Diana Marie Dongell, D.M.D., Ronald E. Hand, D.M.D., Rebecca L. Watkins,

D.M.D., and Renee R. Kalp, D.M.D., through their attorneys, Mark A. Eck, Esquire, Michael A. Cassidy,

Esquire, and Tucker Arensberg, P.C., pursuant to the authority granted by 15 Pa. C.S.A. §1508, and 15 Pa.

C.S.A §1767(a)(2) averring as follows:

### PARTIES

1. Plaintiff Diana Marie Dongell, D.M.D., is an adult individual, licensed dentist and resident

of Washington County, Pennsylvania, who resides at 368 Buckingham Drive, Venetia, Pennsylvania,

15367.

2. Plaintiff Ronald E. Hand, D.M.D., is an adult individual, licensed dentist and resident of

Allegheny County, Pennsylvania, who resides at 221 Stonewood Drive, Bethel Park, Pennsylvania, 15102.

3. Plaintiff Rebecca L. Watkins, D.M.D., is an adult individual, licensed dentist and resident

of Washington County,  Pennsylvania, who resides at 507 Villa Drive, Venetia,  Pennsylvania, 15367.

1

4.      Plaintiff Renee R. Kalp, D.M.D., is an adult individual, licensed dentist and resident of

Allegheny County, Pennsylvania, who resides at 160 Riverwatch Drive, Pittsburgh, Pennsylvania, 15238.

5.      Defendant Associated Dental Specialists, Inc. (hereinafter "Associated Dental"), is a

Pennsylvania corporation with its principal place of business located at 6201 Steubenville Pike, Suite 110,

McKees Rocks, Pennsylvania, 15136.

6.      Plaintiff Diana Marie Dongell, D.M.D., owns 9.2% of the shares of Associated Dental.

7.      Plaintiff Ronald E. Hand, D.M.D., owns 9.2% of the shares of Associated Dental.

8.      Plaintiff Rebecca L. Watkins, D.M.D., owns 9.2% of the shares of Associated Dental.

9.      Plaintiff  Renee R. Kalp, D.M.D., owns 9.2% of the shares of Associated Dental.

10.     Ronald G. Linaburg, D.M.D., (hereinafter "Linaburg") is an adult individual, who owns

60.8% of the shares of Associated Dental and is titled the President of Associated Dental and is its sole

director.

**JURISDICTION AND VENUE**

11.     Jurisdiction in this court is proper in that Defendant Associated Dental is situated  in

Allegheny County.

12.     Venue in this court is proper as events giving rise to this request to inspect company

records have occurred within Allegheny County.

**FACTUAL BACKGROUND**

13.     The averments of Paragraphs 1-12 are incorporated herein by referenced as if more fully

set forth at length.

14.     Each of the Plaintiffs, pursuant to Employment Agreements executed with Associated

Dental receive as compensation a percentage of their billings after various costs and expenses as set by

Linaburg are deducted.

15.     The Plaintiffs believe and aver that the deductions for expenses set by Linaburg have

been calculated in violation of an agreed formulation for setting the deduction amounts.

16.     The Plaintiffs believe and aver that improper personal and other expenses solely related

to Linaburg's personal activities and involvement in unrelated litigation in other matters have been

improperly added so as to create increased deductions thereby decreasing the income awarded to the

Plaintiffs.

17.     Defendant Linaburg in October of 2020 commenced a personal bankruptcy filing in the

United States Bankruptcy Court for the Western District of Pennsylvania at No. 2:20-bk-22898.

18.     Within the last three years, Linaburg has been a party to litigation in various matters in

the Federal District Court for the Western District of Pennsylvania. These matters are found at Action

Nos.:

> In Re: Ronald G. Linaburg, Debtor 2:2020-bk-22898, (Bankr. W.D. Pa.) - (Linaburg is the listed as "debtor")
>
> In Re: 5171 Campbells Land Co., Debtor 2:2019-bk-22715 (Bankr. W.D. Pa.) (Linaburg is the listed as "creditor")
>
> US FOODS, INC. v. KANE et al 2:2019-cv-00946 (W.D. Pa.) (Linaburg is the listed as "defendant" and "creditor")

19.     Within the last three years, Linaburg has been involved in litigation in Allegheny County

and State Court filings captioned:

> Vision Financial Group Incorporated vs Kane et al. GD-20-006196 - (Linaburg is the listed as "defendant");

3

Maglin vs 5171 Campbells Land Company LLC et al GD-18-004336  - (Linaburg is the listed as "defendant");

Foundation Building Materials LLC vs Kane et al AR-20-002688  - (Linaburg is the listed as "defendant");

Sanso et al vs Associated Dental Specialist Inc. GD-00-016757  - (Linaburg is the listed as "defendant"); and

L-Four L.P. vs 5171 Campbells Land Co. Inc. GD-19-002405 -  (Linaburg is the listed as "Plaintiff").

20.     The Plaintiffs believe and aver that some or all of the legal and other expenses are general and unrelated and have been improperly expensed in a manner to reduce the Plaintiffs' income.

21.     Through the creation and execution of various management service agreements executed with an entity identified as Dental Specialty Services, LLC, of which Linaburg serves as President, the management services company was granted authority to prepare fiscal operating and capital budgets for Associated Dental, including the records of expenses for Associated Dental.

22.     It is believed and therefore averred that through the utilization of Dental Specialty Services, LLC, Linaburg improperly inflated expenses and Linaburg further directed corporate opportunities improperly solely to himself or to member of his family , again, all to the financial detriment of the Plaintiffs.

23.     The Plaintiffs believe and aver that some form of trusts have been created by Linaburg, which have or may still be utilized to improperly direct Associated Dental opportunities  solely

4

to the benefits of Linaburg or to his family or that the trusts have or are being utilized in otherwise

improper manners to the ultimate financial detriment of the Plaintiffs.

24.    The Plaintiffs believe and aver that other acts of self-dealing and other improper acts

have occurred to their detriment about which only a full and unfettered review of the books and records

of Associated Dental by them or their representatives can reveal.

## REQUEST FOR ORDER COMPELLING INSPECTION OF ASSOCIATED DENTAL BOOKS AND RECORDS PURSUANT TO 15  Pa. C.S.A. §1508

25.    The averments of Paragraphs 1-25 are incorporated herein by referenced as if more fully

set forth at length.

26.    Pursuant to the provisions of 15 Pa C.S.A. 1508, Attorney Michael Cassidy of Tucker

Arensberg, P.C., was given authority by each of the named Plaintiffs to request a demand for review of

Associated Dental books and records.

27.    Attached as Exhibit "A"  is correspondence dated February 10, 2021 from Attorney Eck

formally demanding a right to inspection of the company's books and records along with copies of the

authorizations of the Plaintiffs.

28.    By a letter dated February 16, 2021, counsel for  Associated Dental which, while

acknowledging the plaintiffs' right to such a requested inspection, purported to limit review of the books

and records.  A copy of the letter is attached hereto as Exhibit "B".

29.    By correspondence  dated February 22, 2021,  counsel for the Plaintiffs rejected the

proposed limited scope of books and review of records and demanded an agreement to full and

complete access of the books and records agreed to by Friday, February 26, 2021.  A copy of the letter is

attached hereto and marked as Exhibit "C".

30.     Via correspondence dated February 25, 2021, counsel for Associated Dental responded but again did not agree to the unfettered book and account access requested by the Plaintiffs.   A copy of the letter is attached hereto and marked as Exhibit "D".

31.     Pursuant to the provisions of  15 Pa. C.S.A. §1508, the Plaintiffs aver that they have complied with the provisions respecting the form and manner of making a demand for inspection of the records of Associated Dental and that the inspection they seek is for a proper purpose.

32.     The Plaintiffs, through counsel, have been requesting access to the books and records as far back as December of 2020.  Attached hereto and made a part hereof and marked as Exhibit "E", is correspondence from counsel for the Plaintiffs demanding access to company books and records.

WHEREFORE, Plaintiffs request entry of the appropriate order granting the Plaintiffs' representatives' rights to an unfettered review of the books and records of Associated Dental Specialists, Inc.

## PETITION FOR APPOINTMENT OF CUSTODIAN OF ASSOCIATED DENTAL

33.     The averments of Paragraphs 1-31 are incorporated herein by referenced as if more fully set forth at length.

34.     The previously described actions of Linaburg are alleged to encompass illegal, oppressive, or fraudulent acts directed to the named Plaintiffs who are owners of five percent (5%) or more of the outstanding shares issued in the corporation.

35.     Additionally, in the Linaburg Bankruptcy matter in the United States Bankruptcy Court for the Western District of Pennsylvania, Case No. 20-228-98-CMB, the  Office of the United States Trustee has just filed a Motion seeking to dismiss or convert to Chapter 7 the Linaburg Bankruptcy.  The pleading is replete with allegations that Linaburg has been involved in "egregious and unnecessary spending of potential estate assets".  See paragraph 10 of the attached Motion marked as Exhibit "F".  Linaburg's "explanations are misleading and do not accurately depict the financial condition of the debtor", (see

6

paragraph 13 of Exhibit "F") and that, among other things, Linaburg's statement of financial affairs :"fails

to include business income from his ownership interest in multiple business (Associated Dental

Specialists, P.C., et al.").  See Paragraph 29 of the Motion.

36.    The Plaintiffs aver that unless a custodian is appointed for the company, they will

continue to be financially harmed by the improper acts of Linaburg.

WHEREFORE, Plaintiffs request entry of an order appointing a custodian of Dental Associates

and granting such other relief as is just and proper.


TUCKER ARENSBERG, P.C.



_/s/ Mark A. Eck_____
Mark A. Eck, Esquire
Pa. I.D. #34613
Michael A. Cassidy, Esquire
Pa. I.D. #26351
Michael A. Shiner, Esquire
Pa. I.D. #78088
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:      Tucker Arensberg, P.C.

Signature:      /s/ Mark A. Eck, Esquire

Name:      Mark A. Eck, Esquire

Attorney No.: #34613



Mark A. Eck                412.594.3930
meck@tuckerlaw.com

February 10, 2021

Associated Dental Specialists, Inc.
c/o Stuart Kaplan, Esquire via email (skaplan@eckertseamans.com)
6201 Steubenville Pike, Suite 110
McKees Rocks, PA 15136

**RE:     Associated Dental Specialists, Inc.**

Dear Stuart:

I am assisting Mike Cassidy with regard to the minority shareholders' issues in this matter.  This letter is sent pursuant to 15 Pa.C.S.A. § 1508 and constitutes a demand for allowance to inspect the books and records of Associated Dental Specialists, Inc., maintained by the corporation.  Given the voluminous nature of the records requested previously, we believe the meeting should occur at the business office of the practice, should include electronic access to records, and we will be accompanied by a forensic accountant.

I have assumed you will accept this on behalf of the company, but if you want me to formally direct it to them, please advise.

Pursuant to the signed Authorizations of the minority shareholders which are attached hereto, Michael Cassidy has been granted authority to make the request and ultimately inspect the requested records.

Be advised that we have reviewed with the minority shareholders all of their potential legal options here if the corporation fails to provide all requested records which very well may include a demand for the appointment of a custodian for the corporation, the potential liquidation of the corporation, the commencement of a shareholder derivative action, and other actions, not the least of which will involve analysis of the legal effects of the sole director of the corporation having filed personal bankruptcy coupled with his breach of fiduciary duty and failure to disclose conflicts of interest.

Finally, please be advised the financial diversions fabricated by Dr. Linaburg have resulted in the practice's failure to pay appropriate compensation to our clients and constitute breach of contract which, if established, will invalidate any restrictive covenant.

Tucker Arensberg, P.C.   1500 One PPG Place   Pittsburgh, PA 15222   p. 412.566.1212   f. 412.594.5619
2 Lemoyne Drive   Suite 200   Lemoyne, PA 17043   p. 717.234.4121   f. 717.232.6802
www.tuckerlaw.com

Stuart Kaplan, Esquire
February 10, 2021
Page 2


The minority shareholders would like to resolve their issues amicably but that requires a true and meaningful series of actions by Dr. Linaburg and that he act now.  We are prepared to petition the court for access in accordance with the statute if access is not granted within five (5) days as prescribed.

Very truly yours,

TUCKER ARENSBERG, P.C.

*Mark A. Eck*

Mark A. Eck, Esquire

MAE:sam

Enclosures

cc:  Michael A. Cassidy, Esquire

TADMS:5453437-2 035921-190522

## **AUTHORIZATION**

I, the undersigned shareholder of Associated Dental Specialists, Inc., hereby authorize Tucker

Arensberg, including Michael A. Cassidy and other employees thereof, to act on my behalf at

any document inspection.

Date: 1/4/2021

TADMS:5437311-1 035921-190522

## AUTHORIZATION

I, the undersigned shareholder of Associated Dental Specialists,
Inc., hereby authorize Tucker Arensberg, including Michael A.
Cassidy and other employees thereof, to act on my behalf at any
document inspection.

Date:
1/4/2021

_Renee R. Valp_

TADMS:5437311-1 035921-190522

## **AUTHORIZATION**

I, the undersigned shareholder of Associated Dental Specialists, Inc., hereby authorize Tucker

Arensberg, including Michael A. Cassidy and other employees thereof, to act on my behalf at

any document inspection.


Date: 4 Jan 2021

TADMS:5437311-1 035921-190522

## AUTHORIZATION

I, the undersigned shareholder of Associated Dental Specialists, Inc., hereby authorize Tucker
Arensberg, including Michael A. Cassidy and other employees thereof, to act on my behalf at
any document inspection.

Date: 1/4/2021

TADMS:5437311-1 035921-190522



Eckert Seamans Cherin & Mellott, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

TEL:  412 566 6000
FAX:  412 566 6099

Stuart R. Kaplan
412.566.5906
skaplan@eckertseamans.comr

February 16, 2021

<u>Via E-mail and Fax</u>
Mark A. Eck, Esq.
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Re:    <u>Associated Dental Specialists, Inc.</u>

Dear Mr. Eck:

We acknowledge receipt of your letter dated February 10, 2021.  We also acknowledge your reference to the "voluminous . . . records requested previously" by Michael Cassidy of your office, which have been provided, concerning Associated Dental Specialists, Inc. ("ADS") and its founder and sole director, Dr. Ronald Linaburg.  While we are pleased to accommodate your request to examine still more records and documents, we are not clear what else you would like to review that has not previously been provided.

We cannot, however, accommodate your desire to have complete access to the electronic books and records of ADS because its electronic files contain significant medical records, other patient identifying information, and personal information concerning persons employed by or providing services to ADS.  We instead propose that you identify what you would like to see and we will make that available for your inspection.  In addition, because of the difficulty of maintaining social distancing at the ADS offices and the disruption an inspection might cause for its patients, we propose that this inspection take place at our offices which are located close to yours.

We also acknowledge the threats and allegations contained in your letter.  We can assure you that decisions made by Dr. Linaburg to purchase equipment and furniture needed by the practice, for example, were not fabricated "financial diversions," even if they had the result of leaving less funds available for distribution as bonuses to your clients, who are very well compensated for their levels of production.

We recognize that your clients have rights as minority shareholders, and we intend to honor those rights fully.  We can assure them that Dr. Linaburg is meeting his obligations to the practice and to ADS.  But it is beginning to appear that  your accusations and ongoing demands reflect little more than a desire on the part of your clients to avoid their covenants against competition, or are designed to force Dr. Linaburg from the practice he founded, which has nurtured and compensated your clients handsomely for the entirety of their careers.

{J2799374.1}

EXHIBIT B



Mark A. Eck, Esq.
February 16, 2021
Page 2

This is not well taken, and we suggest it will do tremendous harm to ADS and the ongoing financial security it offers to each of them.  Instead, we suggest a meaningful dialog among the parties, perhaps moderated by counsel, to get to the heart of the concerns of your clients and to resolve them so that ADS can continue to thrive for the benefit of all.

Please consider such a dialog as an alternative to ongoing legal wrangling.  If you believe it would be helpful, we would also be willing to involve ADS's independent public accountant in some or all of those discussions to answer your clients' reasonable questions.  In the meantime, please identify the records and documents you want to inspect and we will promptly locate them and make them available for inspection by you and your accountant.

Very truly yours,

Stuart R. Kaplan

cc:  William Myers, Esq.



Michael A. Cassidy                412-594-5515
mcassidy@tuckerlaw.com

February 22, 2021

**<u>Via Ordinary Mail and Email</u> -** skaplan@eckertseamans.com

Stuart Kaplan, Esquire
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Re:    Associated Dental Specialists, Inc.

Dear Stuart,

Mark and I have discussed your February 16, 2021 proposal.  We are all aware that comparing the list of the requested information to the information actually provided will clearly indicate that Dr. Linaburg has failed to fulfill the requests.  Furthermore, the statute permits shareholder access to the books and records for inspection, as opposed to the right to look at only what the Dr. Linaburg unilaterally decides to disclose. Therefore, your suggestion that we narrow our requests to a sample to be released upon approval of Dr. Linaburg is in violation of the statute and is expressly rejected.

The HIPAA defense is absurd for three reasons.  First, I'm sure we could have arranged an electronic investigation to avoid PHI to the extent necessary for privacy compliance purposes.  Second, the treatment payment and operations exception of HIPAA clearly permits minimum necessary disclosure.  It is absurd to argue that only the practice advisors and contractors approved by Dr. Linaburg should have unfettered access to that information but not the advisors of the minority shareholders.  Finally, we could easily have the forensic accountant sign a Business Associate Agreement guaranteeing compliance with HIPAA, just as any other service organization.

The suggestion that these demands are made by the minority shareholders in order just to protect themselves is a diversion; those shareholders are entitled to protect themselves from Dr. Linaburg's breach of fiduciary duty in all possible respects.  In reality, Dr. Linaburg is the only corporate director among the parties and therefore the only individual with a legally imposed fiduciary duty.

The issue of how well compensated the shareholders might or might not be is a red herring argument, because we believe the facts will show the shareholders have been undercompensated in accordance with the contracted compensation formula due to the financial manipulations and diversions of Dr. Linaburg, which constitutes breach of contract.

EXHIBIT C



Suggesting that this problem can be resolved by ADS's independent accountant ignores the fact that ADS's accountant is not in fact independent.

Unless Dr. Linaburg provides that access we have legitimately demanded by Friday, February 26, 2021 at 12:00 p.m., we will proceed with all available legal recourse.

Very truly yours,

TUCKER ARENSBERG, P.C.

Michael A. Cassidy

cc:    Mark Eck, Esquire

TADMS:5463941-1 035921-190522



Eckert Seamans Cherin & Mellott, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

TEL   412 566 6000
FAX   412 566 6099
www.eckertseamans.com

Stuart R. Kaplan
412 566 5906
skaplan@eckertseamans.com

February 25, 2021

Michael A. Cassidy, Esq.
Tucker Arensberg, PC
1500 One PPG Place
Pittsburgh, PA 15222

Dear Michael:

We acknowledge receipt of your letter of February 22, 2021. As we both know, your demands for information have been voluminous, and were responded to in good faith with a significant stack of pertinent information.  If you could possibly be more specific as to what you are looking for (e.g., the amounts paid to or on behalf of Dr. Linaburg, capital expenditures, etc.), we are willing to continue gathering and sending to you what you request.

We also acknowledge that under Section 1508 of the Pennsylvania business corporation law, the court shall determine whether the minority shareholders of Associated Dental Specialists, Inc. ("ADS") "have a right to examine… for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom."  We question, however, whether this right requires ADS to grant unfettered access to all of its electronic information, files and records to your forensic accountant, including medical records and other confidential information, without reasonable restrictions on the use and disclosure of this information.

In an effort to expedite this process, we are willing to offer the knowledge of Tony Montanaro, an independent certified public accountant with Louis Plung & Company who is familiar with the payments made to and on behalf of Dr. Linaburg.  Our suggestion would be to have Tony speak with your forensic accountant to guide the searches of the electronic records of ADS, rather than to have your accountant rifle through the voluminous ADS electronic files and records that are completely unrelated to the allegations you have been making.  We also take issue with your summary dismissal of our HIPAA and confidentiality concerns, as discussed in your letter, which are not resolved by simply having your accountant sign a Business Associate Agreement, particularly since HIPAA is not the sole basis for our concerns.

EXHIBIT D



Michael A. Cassidy, Esq.
February 25, 2021
Page 2

We hope that you will accept our offer to have us provide further information and to have the accountants speak, possibly to be followed up with further inspections by your accountant if he or she deems it necessary.  In the meantime, what is the purpose for the demanded inspection and can we please see the verified powers of attorney of your clients authorizing your accountant to make these inspections.

Please let me know if you are interested in receiving further information from us or arranging for a call between the accountants.

Very truly yours,

Stuart R. Kaplan

cc:    Mark A. Eck, Esq.
       William S. Myers, Esq.



Michael A. Cassidy          412-594-5515
mcassidy@tuckerlaw.com

December 1, 2020

**<u>Via Email and Regular Mail</u>** - lmoraytis@eckertseamans.com

Louis J. Moraytis, Esquire
Eckert Seamans
600 Grant Street, 44th Fl.
Pittsburgh, PA 5219

Re:     Associated Dental Specialist, Inc.

Dear Mr. Moraytis:

I represent Drs. Dongell, Hand, Kalp and Watkins, whom have retained Tucker
Arensberg because it has come to their attention that Associated Dental Specialists, Inc.
(Practice) and Dr. Linaburg have reportedly entered into a long-term management
agreement with an entity controlled by Dr. Linaburg's family, and which presumably
allows or at least potentially allows inappropriate conversion of corporate assets for non-
approved purposes.

My clients have several objections.

First, it appears this transaction has been entered into without disclosure to or approval
by the other Shareholders of the Practice.

Second, the suspected diversion of corporate assets could very be well be a breach of
Dr. Linaburg's fiduciary duties as the sole director of the Practice.

Although these suspicions may be unfounded, the concealed nature of the transaction
obviously raises concerns with respect to both the substance and the intent.  Therefore,
my clients would like to exercise their rights under the Pennsylvania Business
Corporation law to inspect the corporate records, which would include all financial
statements and tax returns for the last 3 years, and all the records regarding the design,
preparation, purpose and execution of this aforementioned agreement.

Very truly yours,

TUCKER ARENSBERG, P.C.

s/ *Michael A. Cassidy*

Michael A. Cassidy

MAC/alk

TADMS:5411218-1

Tucker Arensberg, P.C.   1500 One PPG Place   Pittsburgh, PA 15222   p. 412.566.1212   f. 412.594.5619
2 Lemoyne Drive, Suite 200   Lemoyne, PA 17043   p. 717.234.4121   f. 717.232.6802
250 Park Avenue, Suite #1508, 7th Floor   New York, NY 10177   p. 212.739.7910   f. 212.739.9607
www.tuckerlaw.com

EXHIBIT "E"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

RONALD G. LINABURG,                           Case Number: 20-22898-CMB

      Debtor.                                 Chapter 11

————————————————————

UNITED STATES TRUSTEE,

      Movant,
                                              Hearing Date & Time:
      v.                                     April 9, 2021 at 11:00 a.m.

RONALD G. LINABURG,                           Response Deadline:
                                              March 15, 2021
      Respondent.


### MOTION OF THE UNITED STATES TRUSTEE TO DISMISS DEBTOR'S CASE PURSUANT TO 11 U.S.C. § 1112(b) OR, IN THE ALTERNATIVE, TO CONVERT THE CASE TO CHAPTER 7

COMES NOW, Andrew R. Vara, United States Trustee, through his undersigned counsel, seeking dismissal of the Debtor's Chapter 11 case for cause and hereby files the within Motion to Dismiss Debtor's Case Pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, to Convert the Case to Chapter 7 (the "Motion").   In support of this Motion, the United States Trustee states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334, 151 and 157.

2.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

1

EXHIBIT "F"

3.      The United States Trustee files the within pleading pursuant to 28 U.S.C. §
586(a)(3), Fed. R. Bankr. P. 1017(f) and 11 U.S.C. § 1112(b).

4.      The United States Trustee has standing to appear and be heard on this issue
pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586.

## BACKGROUND

5.      The Debtor, Ronald G. Linaburg ("Debtor"), filed a voluntary petition under
chapter 11 of the United States Bankruptcy Code on October 9, 2020.

6.      After seeking and receiving multiple extensions of time to file his completed
bankruptcy schedules, the Debtor's completed documents were filed on December 7, 2020.

7.      A section 341 Meeting of Creditors was held on January 13, 2021.

8.      The Debtor is a retired endodontist who receives $2,615.00 per month in social
security but has substantial investment holdings and interests in multiple business entities.   He
has a non-filing spouse with her own additional income sources.   Despite seeking bankruptcy
relief, the Debtor continues to financially supports two adult children who do not reside with
him.

9.      The Debtor filed the following Monthly Operating Reports ("MOR"):

October 2020 MOR:   Filed on November 16, 2020 [Dkt. No. 35]
November 2020 MOR:   Filed on December 18, 2020 [Dkt. No. 72]
December 2020 MOR:   Filed on January 21, 2021 [Dkt. No. 83]

10.      The Debtor's MORs, along with his testimony at the 341 meeting, reveal
egregious and unnecessary spending of potential estate assets, including extravagant shopping
sprees, ongoing support of adult children, country club memberships, and substantial charitable
contributions.

2

11.     On January 25, 20221, the Court issued an Order requiring the Debtor to file a

Status Report providing additional information or explanations for multiple questionable

expenses contained in Debtor's most recent MOR. [Dkt. No. 84].

12.     On February 9, 2021, the Debtor filed his Status Report. [Dkt. No. 93].

13.     As set forth below, the Debtor's explanations are misleading and do not

accurately depict the financial condition of the Debtor - an individual with considerable financial

means who seeks bankruptcy relief while refusing to alter his lifestyle to the extend necessary to

make a good-faith effort to pay his creditors.

14.     The Debtor has yet to file a disclosure statement or plan which were due February

6, 2021.

15.     On February 4, 2021, the Debtor filed a motion seeking to extend the exclusivity

period and filed a motion to extend the exclusivity period for an unspecified amount of time

beyond the initial 120 days.   A hearing on the motion to extend is scheduled for March 16,

2021. [Dkt. Nos. 90 & 91].

## Schedules and Statement of Financial Affairs

16.     According to Amended Schedule A/B [Dkt. No. 74], the Debtor lists total assets

in the aggregate amount of $11,315,625.56[1.] include the following:

- Real Property located at 924 Valleyview Road, Pittsburgh, PA 15243 (the "Residence") valued at $800,000.00.

- Real Property located at 2059 Pemberton Street, Philadelphia, PA 19146 (the "Philadelphia Property") valued at $700,000.00.

- Various financial accounts valued at $10,535,183.06

---

[1] This aggregate amount reduces the Debtor's interest in certain assets to 50%.

3

17.    The Debtor's Schedule D is not accurate because it lists only the mortgage on the Philadelphia Property. [Dkt. No. 60].

18.    The Debtor's Schedule E/F reflects a total of $3,710,345.25 consisting of nonpriority debts. [Dkt. No. 55].

19.    Although the Debtor testified that much of his unsecured debts arise from commercial guarantees, no Schedule H has been filed in this case.

20.    According to Schedule I [Dkt. No. 53], the Debtor's gross household income is $13,035.87 comprised of the following:

| | |
|---|---|
| $2,500.24: | Rental income |
| $2,615.00: | Debtor's Social Security |
| $7,433.83: | Non-filing spouse's gross employment income |
| $1,763.00: | Non-filing spouse's social security income |
| $486.80: | Non-filing spouse's pension |

21.    Schedule I includes withholdings from the Non-filing wife's employment income in the total amount of $3,551.21, including payroll withholdings of $983.86 and health insurance of $2,567.35 per month.

22.    At the 341 meeting, the Debtor testified that the rental income is "tenant payments" from Debtor's adult daughter's roommates who reside with her in the Philadelphia Property.    He, also, testified that the health insurance withholdings include coverage for the Debtor, his spouse, and his adult daughter.

23.    Although the Debtor's 2019 tax return reflects income from dividends and other business income, that additional income is not disclosed on Schedule I.

4

24.    Additionally, the Debtor has not provided copies of his account statements for the

60 days priors to the petition date, including a corresponding check register and identification of

payees and wire transfers, as required by the United States Trustee.

25.    Schedule J [Dkt. No. 54] lists total monthly expenses of $62,151.48 which, in

relative part, includes:

| | |
|---|---|
| Food and household supplies: | $  2,818.33 |
| Childcare and children's education costs: | $  5,821.00 |
| Personal care products: | $  1,671.00 |
| Medical and dental expenses: | $  1,016.75 |
| Entertainment, clubs, etc.: | $  1,926.53 |
| Charitable contributions: | $     650.00 |
| Taxes: | $ 29,371.25 |
| Other payments for support: | $  4,000.00 |
| Other real property: | $  4,898.63 |

26.    At the 341 meeting, the Debtor testified to the following concerning his expenses:

- He pays his adult daughter's medical school tuition of $34,000.00 per year.   He pays all of her living expenses.   She does not work and has not incurred any student loans.

- The entertainment expense includes a membership fee to St. Clair Country Club.

- The $4,000.00 per month support payment on Schedule J is a monthly stipend of $3,000.00 to his 28-year-old daughter and $1,000.00 monthly stipend to his adult son.

- The other real property expenses of $4,898.63 include the mortgage, taxes, and maintenance of the Philadelphia Property where his adult daughter resides.

- In addition, the mortgage on the Debtor's residence of $1,743.21 per month was omitted from Schedule J.

27.    The Debtor's Form 122B – Chapter 11 Statement of Current Monthly Income

("Statement of Current Monthly Income") was initially filed at Dkt. No. 52 as a blank document.

It was filed again at Dkt. No. 57 but is not accurate.    It fails to list the Debtor's social security income, his business income, and income from dividends.

28.    Debtor's Statement of Financial Affairs ("SOFA") is likewise not accurate. [Dkt. No. 50].

29.    On Part 2 of SOFA, the Debtor answered "no" to the question of whether he had income from employment or the operation of a business in the last two years.    It fails to include business income from his ownership interest in multiple business (Associated Dental Specialists, P.C., First Capital Housing Partners, Venator Capital Partners, LP, L-Four, Inc., and L-Four LP), as it was contained on his 2019 tax return.[2]

30.    Part 3, question 8 of SOFA fails to list payments made on his daughter's behalf to pay for her tuition expenses as these expenses.

31.    Part 6, question 13 of SOFA fails to list all payment and gifts to any person over $600.00 in the last two years.    This would include the monthly gifts to his adult children and possibly others which have not been identified.

32.    Part 6, question 14 of SOFA fails to list all charitable contributions over $600.00 in the last two years.

33.    Part 7 question 18 of SOFA fails to list details concerning the 2020 prepetition transfer of his 100% ownership of a vehicle to him and his non-filing spouse jointly.

---

[2] Notably, the Debtor's 2019 federal tax return reflects income from "Qualified Dividends" in the aggregate amount of $178,290.00 and a tax refund of $29,234.00.    This income is not listed on SOFA nor is it reflected on Schedule I.

6

**Monthly Operating Report - October 2020**

34.    The Debtor's MOR for October 2020 was filed on November 16, 2020. [Dkt. No.

34].

35.    According to the October MOR, the beginning cash balance was $250.00, and the

income is listed only as a transfer of $35,000.00 from the Charles Schwab account.

36.    It includes the following expenditures in the aggregate amount of $25,760.00:

| Disbursement Category | Amount |
|---|---|
| Household Expenses | $2,510.94 |
| Gifts | $4,000.00 |

37.    A payment to Capital One in the amount of $2,510.94 is categorized as

"Household Expenses".

38.    The "Gifts" are the monthly stipends of $3,000 and $1,000 paid to the Debtor's

two adult children.

39.    The October MOR fails to reflect the Debtor's other sources of household income

that are reflected on his Schedule I.

**Monthly Operating Report - November 2020**

40.    The Debtor's MOR for November 2020 was filed on December 18, 2020. [Dkt.

No. 72].

41.    According to the November MOR, the beginning cash balance was $9,489.77,

and the income is listed only as a transfer of $40,000.00 from the Charles Schwab account.

42.    It includes the following expenditures in the aggregate amount of $31,936.02:

| Disbursement Category | Amount |
|---|---|
| Medical Expenses | $3,528.38 |
| Household Expenses | $12,052.30 |
| Travel & Entertainment | $1,167.04 |
| Gifts | $10,521.10 |

43.    The Debtor's November expenses include the following payments:

- Payment to Taylor Linaburg:        $  3,000.00
- Payment to Matt Linaburg:          $  1,000.00
- Payment to Judy Linaburg:          $     800.00
- Payment to Capital One:            $  7,490.24
- Payment to American Express:       $ 11,693.00
- Duquesne Club:                     $     361.16
- Bower Hill Church:                 $  1,500.00
- GM Financial – Cadillac CT6:       $     757.36
- Dollar Bank – (Philadelphia):      $  1,453.84

44.    Upon closer review of the (barely readable) American Express credit card statements attached to the November MOR, the Debtor's wife (Judy) made thousands of dollars in purchases from Saks Fifth Avenue, Bergdorf Goodman, and other retail stores for "gifts".

45.    The Capital One credit card statement includes an $865.00 purchase at a plastic surgery center (indicated as "light treatment"), "holiday cards" in the amount of $569.24, and "holiday gifts" of $686.29.

46.    Although the MOR reflects $0.00 in the "Charitable Contribution" category, the Debtor wrote a check in the amount of $1,500.00 to Bower Hill Community Church for a holiday offering.

8

47.     In addition to payments to his adult children, the Debtor is paying $757.36 for a

Cadillac CT6 which is *not listed* on his Schedule A/B.   Presumably, it is yet another payment he

is making for the benefit of a family member.   According to the statement attached to the MOR,

it appears to be for a vehicle lease.   To the extent it is the Debtor's lease, it is not listed on

Scheduled G.

48.     Again, the November MOR fails to reflect any additional income sources for the

Debtor or his spouse, other than a withdrawal of $40,000.00 from the Charles Schwab

investment account.

**Monthly Operating Report - December 2020**

49.     The Debtor's MOR for December 2020 was filed on January 21, 2021. [Dkt. No.

83].

50.     According to the December MOR, the beginning cash balance was $17,526.75

and the income is listed $50,225.00.   The income consists of a $45,000.00 transfer from the

Charles Schwab account and a $5,225.00 "expense reimbursement" which is not explained.

51.     It includes the following expenditures in the aggregate amount of $45,038.81:

| Disbursement Category | Amount |
| --- | --- |
| Medical Expenses | $1,645.00 |
| Household Expenses | $15,773.61 |
| Charitable Contributions | $5,140.00 |
| Travel & Entertainment | $1,167.04 |
| Gifts | $17,187.58 |

52.     The Debtor's December expenses include the following payments:

- Payment to Capital One Visa:     $ 24,180.35
- Payment to Taylor Linaburg:      $  3,200.00
- Payment to Matt Linaburg:        $  1,000.00

9

- Payment to Judy Linaburg:                    $    800.00
- Payment to American Express:              $  4,382.22
- Duquesne Club:                                    $    360.38
- St. Clair Country Club:                         $      48.00
- Bower Hill Church:                               $    140.00
- GM Financial – Cadillac CT6:             $    757.36
- Dollar Bank – (Philadelphia):              $  1,502.29
- **Lawn services:**                                **$  1,792.25**
- **Heinz History Center:**                    **$  5,000.00**

53.    The credit card statements attached to the December MOR are partially obscured but from what is visible they, again, reflect *tens of thousands* of dollars in retail purchases from expensive stores for clothing, "gifts", more "holiday cards", and other luxuries.

54.    Additionally, the Debtor made a $5,000.00 donation to the John Heinz History Center to secure his "Chairman's Circle Membership".

55.    The Debtor continues to provide thousands of dollars in monetary support to his adult children and is making payments on a Cadillac CT6.

56.    Again, the December MOR fails to reflect any additional income sources other than a withdrawal of $45,000.00 from the Charles Schwab investment account and expense reimbursement which is not explained on the MOR.

57.    The Debtor's pattern of filing inaccurate documents and egregious spending warrants dismissal of the chapter 11 case.

58.    By the filing of this Motion, the United States Trustee seeks dismissal of the Debtor's bankruptcy case for cause.    Alternatively, should this Court decide that dismissal is not in the best interests of creditors, then the case should be converted to one under chapter 7.

**BASIS FOR RELIEF**

59.    Upon filing a case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), the debtor becomes a "debtor in possession." 11 U.S.C. § 1101(1).   A

debtor in possession has many of the statutory duties of a chapter 11 trustee. 11 U.S.C. §

1107(a).   A debtor in possession also serves as a fiduciary to the creditors and the bankruptcy

estate, and so must administer the estate for the benefit of creditors, not for the benefit of the

debtor and his or her family.   *See, e.g.*, *Commodity Futures Trading Com. v. Weintraub*, 471

U.S. 343, 355 (1985).

60.    Under 11 U.S.C. § 1112(b)(1) "the court shall convert a case under this chapter to

a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of

creditors and the estate for cause unless the court determines that the appointment under section

1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

61.    Bankruptcy courts have broad discretion in determining whether cause exists to

dismiss a chapter 11 bankruptcy case under 11 U.S.C. § 1112(b). *See In re Am. Capital Equip.*,

LLC, 688 F.3d 145, 161 (3rd Cir. 2012).

62.    As "cause" is not defined in the Bankruptcy Code, anything that provides

adequate or sufficient reason to dismiss or convert a case can constitute cause under section

1112(b).   *Cf. Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d

1253, 1261-62 (11th Cir. 2013) ("[T]he ordinary meaning of 'cause' is adequate or sufficient

reason.").

63.    Section 1112(b)(4) provides examples of cause including a "substantial or

continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

11

rehabilitation" and "gross mismanagement of the estate." *See* 11 U.S.C. §§ 1112(b)(4)(A) & (B);

*see also* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").    The list is not

exclusive, so other, unenumerated factors can constitute cause. *See Official Comm. of Unsecured*

*Creditors v. Nucor Corp.* (*In re SGL Carbon Corp.*), 200 F.3d 154, 160 (3d Cir. 1999).    Only

one example of cause is needed to affirm an order dismissing or converting a case under section

1112(b). *See Hoover v. Harrington (In re Hoover)*, 828 F.3d 5, 9 (1st Cir. 2016).    Congress

intended the bankruptcy courts to consider additional factors as they arise, and to use their

equitable powers to reach an appropriate result in individual cases. 11 U.S.C. § 1112(b). *Milford*

*Connecticut Assocs., L.P. v. Adams* (*In re Milford Conn. Assocs., L.P.)*, 404 B.R. 699, 707

(D.Conn. 2009).

64.    The statutory language is mandatory—once cause is found, the Court must

dismiss or convert unless unusual circumstances apply. *Nester v. Gateway Access Solutions, Inc.*

(*In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 561 (M.D.Pa. 2007).[3]

65.    Once cause is established, whether to convert or dismiss is left to the sound

discretion of the bankruptcy court. *Fid. Deposit & Discount Bank v. Domiano* (*In re Domiano)*,

442 B.R. 97, 109 (Bankr. M.D.Pa. 2010); *In re Congolem Corp.,* 414 B.R. 44, 61 (D.N.J. 2009);

*In re Ramreddy, Inc.,* 440 B.R. 103, 115 (E.D. Pa. 2009); *In re Johnson,* No. 05-39238bf, 2008

WL 696917 at *7 (Bankr. E.D. Pa. Mar. 11, 2008).

---

[3] After cause is established under § 1112(b), the burden shifts to the debtor to establish unusual
circumstances that would warrant continuation of the chapter 11 case as in the best interest of the
creditors and the estate. 11 U.S.C. § 1112(b)(1); *In re Kholyavka*, No. 08-10653DWS, 2008 WL
3887653 at *5 (Bankr. E.D. Pa. Aug. 20, 2008). "'Unusual circumstances' contemplates
conditions that are not common in chapter 11 cases."    *In re LG Motors, Inc.*, 422 B.R. 110, 116
(Bankr. N.D. Ill., 2009).

66.    An individual debtor must ensure that post-petition earnings and other future income will be included to the extent necessary to fund the plan. 11 U.S.C. § 1123(a)(8); *see also* 11 U.S.C. § 1115(a)(2) (post-petition earnings are property of the bankruptcy estate in individual chapter 11 cases).   In addition, if a creditor objects to the plan, an individual debtor must ensure that an amount equal to his projected "disposable income" (as defined in 11 U.S.C. § 1325(b)(2)) during the life of the plan will be distributed to creditors under the plan. 11 U.S.C. § 1129(a)(15); *see also* 11 U.S.C. § 1325(b)(2) ("[T]he term 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . and . . . if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.").

## Diminution of the Bankruptcy Estate

67.    Section 1112(b)(4)(A) provides that cause to dismiss a chapter 11 case exists where there is both (i) a substantial or continuing loss to or diminution of estate assets and (ii) the absence of a reasonable likelihood of rehabilitation.

68.    A "substantial or continuing loss to or diminution of estate assets" is established where, as here, the debtor lacks sufficient monthly income to pay his monthly expenses. *See, e.g.*, *3685 San Fernando Lenders LLC v. Cross Equities Partners, LLC (In re USA Commer. Mortg. Co.)*, 452 F. App'x 715, 723 (9th Cir. 2011) (holding that conversion under section 1112(b)(4)(A) was warranted where "[t]he record contain[ed] evidence suggesting that [the debtor] had a negative cash flow[ ]"); *Loop Corp. v. United States Tr.,* 379 F.3d 511, 515-16 (8th

13

Cir. 2004) (holding that "[a] negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate'").

69.    It is clear from the Debtor's MORs that he is diverting other household income and funding his lavish lifestyle exclusively with withdrawals from his investment accounts.

70.    The Debtor is depleting assets of the bankruptcy estate at an alarming rate.   He is unquestionably doing so for the benefit of himself and his family and to the detriment of his creditors.

71.    He appears to be actively spending down his assets, on an extravagant lifestyle which, also, supports adult children, for the sole purpose of limiting what he would otherwise have available to pay to his creditors in a liquidation alternative test.

72.    There is a basic assumption that bankruptcy is for the "honest but unfortunate debtor".   Inherent in this assumption is the requirement of good faith.   Good faith includes a showing that a debtor is making a concerted effort to alter his or her lifestyle to reflect that of a bankrupt debtor.   A debtor, such as Mr. Linaburg, simply should not be permitted to continue living a lifestyle which includes unbridled spending to the detriment of his creditors while under the shield of bankruptcy.

73.    Accordingly, the Debtor suffers continuing losses to, and diminution of, his bankruptcy estate through his own willful actions.

74.    Once cause is found to exist, § 1112(b)(2) shifts the burden to the debtor to show "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," and to show that reasonable period of time," and (ii) the grounds for converting or dismissing the case, other than under section 1112(b)(4)(A), were

14

reasonably justified or will be cured within a reasonable period of time. *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech., Inc.*, 465 F. Appx 93, 98 (3rd Cir. 2011) (holding that the debtor bears the burden of making the showing required under § 1112(b)(2)).

75.     When the debtor is unable to make the showing required by § 1112(b)(2), the bankruptcy court must either dismiss the case or convert it to one under chapter 7, "whichever is in the best interests of creditors and the estate," unless it chooses to appoint a chapter 11 trustee or examiner. 11 U.S.C. § 1112(b)(1).

76.     The bankruptcy court has broad discretion in choosing whether conversion or dismissal would be in the best interests of creditors and the estate. *See SGL Carbon*, 200 F.3d at 159 n.8.

77.     What is in the best interests of the Debtor and his family are not what is contemplated by the statute.   Instead, the Debtor must demonstrate what is in the best interest for the creditors and bankruptcy estate.   And, in any event, there is nothing unusual about an individual chapter 11 debtor in possession being unable to confirm a plan and, as a result, facing the personal risks attendant to dismissal of his bankruptcy case.

### Failure to Rehabilitate

78.     For a chapter 11 debtor to demonstrate an ability to reorganize "there must be a reasonable possibility of a successful reorganization within a reasonable time."   *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988); *First Jersey Nat'l Bank v. Brown (In re Brown),* 951 F.2d 564, 572 (3d Cir. 1991).

79.     "The Court shall confirm a plan only if . . . the plan has been proposed in good faith."   11 U.S.C. § 1129(a)(3).

15

80.    "This good faith standard ensures that a plan will fairly achieve a result consistent

with the objectives and purposes of the Bankruptcy Code." *In re Federal-Mogul Global, Inc., et*

*al.,* 684 F.3d 355, 381(3d Cir. 2012); *In re PWS Holding Corp.,*228 F.3d 224, 242 (3d Cir. 2000).

81.    "Where a plan is proposed with the legitimate and honest purpose to reorganize

and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied."

*Western Real Estate Equities, L.L.C. v. Vill at Camp Bowie I, L.P.* (*In re Matter of Village at*

*Camp Bowie I, L.P.),* 710 F.3d 239, 247 (5th Cir. 2013).

82.    "Specifically, under Chapter 11, the two 'recognized' policies, or objectives, are

'preserving going concerns and maximizing property available to satisfy creditors.' More

generally, the Bankruptcy Code's objectives include: 'giving debtors a fresh start in life,'

'discouraging debtor misconduct,' and 'the expeditious liquidation and distribution of the

bankruptcy estate to its creditor…. The plan must be reasonably likely to succeed on its own

terms without a need for further reorganization on the debtor's part.'" *In re American Capital*

*Equip., LLC,* 688 F.3d 145, 156-7 (3d Cir. 2012). [*citations omitted.*]

83.    Where a debtor does not demonstrate the ability to file a confirmable plan in good

faith, the Court may find that cause exists to either dismiss the chapter 11 case or convert it to

chapter 7 under 11 U.S.C. § 1112(b).

84.    "The Third Circuit has determined that cause exists when there is not 'a

reasonable possibility of a successful reorganization within a reasonable period of time' If the

debtor has no viable prospect of confirming a plan, then there is 'no point in expending estate

assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy

legal rights. As the Third Circuit has noted, a bankruptcy court is 'not bound to clog its docket

16

with visionary or impracticable schemes for resuscitation.'" *Anderson v. Commonwealth*

*Renewable Energy, Inc.* (*In re Commonwealth Renewable Energy, Inc.*), 550 B.R. 279, 283

(W.D.Pa. 2016) *citing In re American Capital Equip., LLC,* 688 F.3d at 162; *In re Brown* 951

F.2d 564, 572 (3d Cir. 1991).

85.     It is evident from the Debtor's MORs that he has not altered his lifestyle in

anticipation of filing a plan which would require him to dedicate all disposable monthly income

to fund a plan.

86.     On the contrary, the MORs and the Debtor's Status Report reflect that his

expenses are being funded by the diminution of the Debtor's existing assets.

87.     When questioned about his continued support of his 28-year-old daughter in

medical school at the 341 meeting, he was surprised by the notion that she, as an adult person,

could take out student loans to pay for her own tuition and living expenses.

88.     Based upon his activity in the four months since this chapter 11 case was

commenced, the Debtor has demonstrated an unwillingness to refrain from unnecessary spending

which would, also, establish a pattern in support of an ability to fund a confirmable plan.

89.     In addition, the Debtor now seeks to extend the exclusivity period.

90.     To allow the Debtor to languish in chapter 11 only enables him to further

decimate his assets at the expense of his creditors.

91.     The fact that the Debtor may experience consequences of creditor action if the

case is dismissed is not sufficient unusual circumstance to overcome the burden of proof to

overcome cause for dismissal.

17

92.     The Debtor simply cannot establish an ability to fund a plan given his income and pattern of expenses over the last four months.

93.     Based on the Debtor's claim that he has limited monthly income and to the egregiously high amount of routine, non-essential purchases, it does not appear that the Debtor will be able to file a confirmable plan of reorganization.

<p align="center">**Gross Mismanagement**</p>

94.     Cause to convert or dismiss includes gross mismanagement of the estate.   11 U.S.C. § 1112(b)(4)(B).

95.     A debtor-in-possession owes a fiduciary duty to its creditors. *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc.* (*In re G-I Holdings, Inc.*), 385 F.3d 313, 319 (3d Cir. 2004).

96.     "Debtors are debtors in possession of their chapter 11 estate. As such, they owe fiduciary duties to their creditors and are obligated to follow the Code and Rules. *See, e.g.,* § § 1106, 1107 and Fed. R. Bankr.P.2015 (delineating the duties of chapter 11 debtors in possession, including filing periodic reports of business operations); 7 Collier on Bankruptcy, ¶ 1107.02, 1107–6 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) ("The debtor in possession must perform not only the functions and duties of a chapter 11 trustee, as specified in section 1106(a), but also the duties set forth in Bankruptcy Code chapters 3 and 5, and the Federal Rules of Bankruptcy Procedures, which are applicable to chapter 11 cases.").

97.     Gross mismanagement alone is sufficient grounds for conversion from Chapter 11 to Chapter 7. *See In re Incredible Auto Sales, LLC,* 2007 WL 1100276 (Bankr. D. Mont. 2007).

98.    "Bankruptcy courts have found gross mismanagement in cases where debtors have not maintained an effective corporate management team, *In re Products Int'l Co.*, 395 B.R. 101, 111 (Bankr. D. Ariz. 2008); failed to follow through on their fiduciary duties under chapter 11, including obtaining credit or financing outside the ordinary course of the debtor's business, *In re Wallace*, No. 09–20496–TLM, 2010 WL 378351, at *4 (Bankr. D. Idaho Jan. 26, 2010) *aff'd, In re Wallace*, No. 09–20496–TLM, 2011 WL 1230535 (D. Idaho Mar. 30, 2011); filed monthly reports without closely monitoring them; or where the business lacks effective management, *In re Creech*, 538 B.R. 245, 251 (Bankr. E.D. N.C. 2015) (collecting cases). *Kingsway Capital Partners, LLC v. Sosa,* 549 B.R. 897 (N.C. Cal. 2016).

99.    "To determine whether a transaction is in the ordinary course of business, a court must engage in a two-step inquiry. First, it must decide whether the transaction is of the type in which others in the debtor's business would engage. Second, it determines whether the debtor's creditors would reasonably expect him to enter into the transaction at issue." *Alston v. Deangelis (In re Alston),* 2013 WL 6210249 *7 (E.D. Pa 2013) citing *In re Roth American, Inc.,* 975 F.2d 949, 953 (3d Cir. 1992); *Office of U.S. Tr. v. Lombardozzi (In re RJC Indus.),* 369 B.R. 845, 851 (Bankr. M.D. Pa. 2006).

100.    As stated above, the Debtor is depleting his assets at an alarming rate.   The MORs reveal frivolous spending and unnecessary luxury purchases.

101.    The Debtor is, also, funding his adult children and failing to disclose other household income in his DIP account.

19

102.    Through the end of December 2020, in three months, the Debtor spent a total of

$102,762.006, which was funded almost exclusively by withdrawals from his Charles Schwab

investment account.

103.    The Debtor's spending is, in large part, comprised of continuing non-essential and

unreasonable purchases of the Debtor and his non-filing spouse that not only demonstrate the

gross mismanagement of the bankruptcy estate, but also calls into question his ability or

willingness to make payments under a chapter 11 plan of reorganization.

104.    As additional facts become known, the United States Trustee reserves the right to

amend or supplement the within Motion.

WHEREFORE, the United States Trustee respectfully requests that the Court to enter an

Order dismissing Debtor's case for cause or, in the alternative, converting the case to one under

Chapter 7 and grant any further relief as it deems just and proper.


Respectfully Submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
Regions 3 and 9


Dated: <u>February 23, 2021</u>                    By: */s/ Jodi Hause*
Jodi Hause, Trial Attorney
PA ID NO. 90625
Liberty Center, Suite 970
1001 Liberty Ave.
Pittsburgh, Pennsylvania 15222
(412) 644-4756 Telephone
(412) 644-4785 Facsimile
Jodi.Hause@usdoj.gov

20

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

RONALD G. LINABURG,                         Case Number: 20-22898-CMB

            Debtor.                           Chapter 11

———————————————————

UNITED STATES TRUSTEE,                      Related to Doc. Nos.:

            Movant,

            v.                               <u>Hearing Date & Time</u>:
                                            April 9, 2021 at 11:00 a.m.

RONALD G. LINABURG,                         <u>Response Deadline</u>:
                                            March 15, 2021
            Respondent.


## <u>ORDER OF COURT</u>

AND NOW, on this _____ day of _____, 2021 on the

United States Trustee's Motion to Dismiss Debtor's Case Pursuant to 11 U.S.C. § 1112(b) or, in

the Alternative, to Convert the Case to Chapter 7, after notice and a hearing thereon, and finding

that cause exists to dismiss the Debtor's case and that dismissal is in the best interests of

creditors, it is hereby;

ORDERED ADJUDGED and DECREED that the Debtor's case is dismissed.


                     _____
                     CARLOTA M. BÖHM
                     CHIEF JUDGE
                     UNITED STATES BANKRUPTCY COURT

## **VERIFICATION**

The undersigned verifies that the statements made in the foregoing  Petition Seeking

Order Compelling Inspection of Company Books and Records and Appointment of a Custodian

for the Company are true and correct to the best of my knowledge, information and belief and

understand the statements therein made subject to the penalties of 18 Pa. C.S. Section 4904

relating to unsworn falsification to authorities.


3/7/21
Date

Renee R.. Kalp, D.M.D.

03/05/2021 FRI 12:06                                                                                        iR-ADV 6575                    001

```
                          *****************
                          *** TX REPORT ***
                          *****************


JOB NO.              2184
ST. TIME             03/05 12:04
SHEETS               2
FILE NAME


TX INCOMPLETE        -----
TRANSACTION OK       -----
ERROR                ist@tuckerlaw.com                          IST
```

MAR/05/2021/FRI 01:33 PM   associated dental          FAX No. 724 514 6235              P. 001

Firefox                                                                                              about:blan

## VERIFICATION

The undersigned verifies that the statements made in the foregoing Petition Seeking

Order Compelling Inspection of Company Books and Records and Appointment of a Custodian

for the Company are true and correct to the best of my knowledge, information and belief and

understand the statements therein made subject to the penalties of 18 Pa. C.S. Section 4904

relating to unsworn falsification to authorities.

3/5/2021
Date

Rebecca L. Watkins, D.M.D.

MAR/05/2021/FRI 01:33 PM    associated Document    Page 59 of 65514 6235          P. 001

Firefox                                                                                              about:blan

## VERIFICATION

The undersigned verifies that the statements made in the foregoing  Petition Seeking

Order Compelling Inspection of Company Books and Records and Appointment of a Custodian

for the Company are true and correct to the best of my knowledge, information and belief and

understand the statements therein made subject to the penalties of 18 Pa. C.S. Section 4904

relating to unsworn falsification to authorities.


 3/5/2021
 _____                            _____
 Date                                    Rebecca L. Watkins, D.M.D.

MAR/05/2021/FRI 01:34 PM   associated Document   Page 60 of 65   P. 002

## VERIFICATION

The undersigned verifies that the statements made in the foregoing  Petition Seeking

Order Compelling Inspection of Company Books and Records and Appointment of a Custodian

for the Company are true and correct to the best of my knowledge, information and belief and

understand the statements therein made subject to the penalties of 18 Pa. C.S. Section 4904

relating to unsworn falsification to authorities.


_5 March 2021_

Date

Ronald E. Hand, D.M.D.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| DIANA MARIE DONGELL, D.M.D., RONALD E. HAND, D.M.D., REBECCA L. WATKINS, D.M.D., and RENEE R. KALP, D.M.D, | CIVIL DIVISION |
| | No.  GD 21-001958 |
| Plaintiffs, | |
| v. | **AMENDMENT TO PETITION SEEKING ORDER COMPELLING INSPECTION OF COMPANY BOOKS AND RECORDS AND APPOINTMENT OF A CUSTODIAN FOR THE COMPANY** |
| RONALD G. LINABURG, D.M.D, and ASSOCIATED DENTAL SPECIALISTS, INC., a Pennsylvania corporation, | |
| Defendants. | |

Filed on Behalf of Plaintiffs:

DIANA MARIE DONGELL, D.M.D., RONALD E.
HAND, D.M.D., REBECCA L. WATKINS, D.M.D.
and RENEE R. KALP, D.M.D

Counsel of Record for This Party:

Mark A. Eck, Esquire
Pa. I.D. No. 34613
meck@tuckerlaw.com

Michael A. Cassidy, Esquire
Pa. I.D. No. 26351
mcassidy@tuckerlaw.com

Michael A. Shiner, Esquire
Pa. I.D. No. 78088
mshiner@tuckerlaw.com

TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
(412) 594-3930

TADMS:5477335-1 035921-190522

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

DIANA MARIE DONGELL, D.M.D., RONALD          CIVIL DIVISION
E. HAND, D.M.D., REBECCA L. WATKINS,
D.M.D., and RENEE R. KALP, D.M.D,            No.  GD 21-001958

       Plaintiffs,

v.

RONALD G. LINABURG, D.M.D., and
ASSOCIATED DENTAL SPECIALISTS, INC., a
Pennsylvania corporation,

       Defendants.

## <u>AMENDMENT TO PETITION SEEKING ORDER COMPELLING INSPECTION OF COMPANY BOOKS AND RECORDS AND APPOINTMENT OF A CUSTODIAN OF THE COMPANY</u>

NOW COME Plaintiffs, Diana Marie Dongell, D.M.D., Ronald E. Hand, D.M.D., Rebecca L. Watkins, D.M.D., and Renee R. Kalp, D.M.D., through their attorneys, Mark A. Eck, Esquire, Michael A. Cassidy, Esquire, and Tucker Arensberg, P.C., and as permitted by the Pennsylvania Rules of Civil Procedure hereby amend the Petition Seeking Order Compelling Inspection of Company Books and Records and Appointment of a Custodian of the Company to have the caption delete reference to Ronald G. Linaburg, M.D. as a Defendant, averring as follows:

1.      The Petition Seeking Order Compelling Inspection of Company Books and Records and Appointment of a Custodian of the Company is hereby amended to have the caption read as follows:

DIANA MARIE DONGELL, D.M.D., RONALD E. HAND, D.M.D.,
REBECCA L. WATKINS, D.M.D., and RENEE R. KALP, D.M.D,

       Plaintiffs,

vs.

ASSOCIATED DENTAL SPECIALISTS, INC., a Pennsylvania
corporation,

       Defendant.

2.        All other averments of the Petition are incorporated herein by reference as if the same

were more fully set forth at length.

<div style="margin-left:40%">

TUCKER ARENSBERG, P.C.


/s/ *Mark A. Eck, Esquire*_____
Mark A Eck, Esquire
PA  I.D. #34613
1500 One PPG Place
Pittsburgh, PA 15222

</div>

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Tucker Arensberg, P.C.</u>

Signature:      <u>*/s/ Mark A. Eck, Esquire*</u>

Name:        <u>Mark A. Eck, Esquire</u>

Attorney No.: #<u>34613</u>

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via email to the following on this 9th day of

March, 20201, as follows:

Stuart Kaplan, Esquire
skaplan@eckertseamsn.com

/s/ Mark A. Eck, Esquire
Mark A. Eck, Esquire