IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 20-22898-CMB |
| | ) | |
| Ronald G. Linaburg, | ) | |
| | ) | |
| Debtor, | ) | Chapter 11 |
| | ) | |
| Ronald G. Linaburg, | ) | |
| | ) | Document No. |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| No respondents. | ) | |

## AMENDED EXHIBIT A

Attached hereto is the fully executed settlement agreement previously filed as an unsigned original Exhibit A.

Dated: May 11, 2023

Respectfully submitted,

/s/Brian C. Thompson, Esquire
Brian C. Thompson, Esquire
PA I.D. # 91197
Thompson Law Group, P.C.
125 Warrendale Bayne Rd. Suite 200
Warrendale, Pennsylvania 15086
724-799-8404 Telephone
724-799-8409 Facsimile
bthompson@thompsonattorney.com

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Settlement Agreement**") dated as of April_____, 2023 (the "**Effective Date**"), is entered between Debtor Ronald G. Linaburg ("**Debtor**"); and PNC Bank, N.A. ("**PNC**"). Debtor and PNC are individually a "**Party**" and collectively they are the "**Parties**."

## RECITALS

A. By virtue of a Deed (the "**Deed**") dated December 13, 2010, Debtor and Mrs. Judith K. Linaburg ("**Mrs. Linaburg**") acquired title to property commonly known as 924 Valleyview Road, Pittsburgh, Pennsylvania (the "**Property**") as tenants in the entireties. The Deed was recorded in the real property records with the Allegheny County Recorder's Office in Pennsylvania on December 21, 2010.

B. On July 22, 2016, Debtor executed a Choice Home Equity Line of Credit Agreement in favor of PNC in the amount of $690,000.00 (the "**2016 HELOC**") and an Open-End Mortgage, which pledged the Property as collateral (the "**2016 Mortgage**") to secure the 2016 HELOC. The 2016 Mortgage was recorded in the Allegheny County Recorder's Office in Pennsylvania in Mortgage Book Volume 46783, Page 443.

C. On October 9, 2020 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Pennsylvania ("**Bankruptcy Court**"), No. 20-22898-CMB (the "**Bankruptcy Case**").

D. On January 13, 2021, PNC filed a proof of claim in the amount of $650,075.43 representing the 2016 HELOC, secured by the 2016 Mortgage on the Property. On November 29, 2022, PNC filed an Amended Proof of Claim in the amount of $753,741.84 (the "**Claim**"). Debtor filed an Objection to PNC's Amended Proof of Claim challenging the amount asserted.

E. On December 5, 2022, Debtor filed a complaint (the "**Complaint**") against PNC and initiated the adversary proceeding styled as *Linaburg v. PNC Bank, N.A.* (Adv. Pro. No. 22-2074-CMB) (the "**Adversary Proceeding**"), in which Debtor asserted PNC's 2016 Mortgage is unenforceable and should be stripped from the Property.

F. PNC filed a Motion to Dismiss the Complaint asserting PNC's 2016 Mortgage is a valid and enforceable lien on the Property. Debtor filed an Amended Complaint again seeking to strip PNC's 2016 Mortgage related to Debtor's non-filing spouse's non-execution of the 2016 HELOC and 2016 Mortgage.

G. To avoid the cost and uncertainty of further litigation in the Bankruptcy Case and Adversary Proceeding, Debtor and PNC desire to compromise and settle their dispute, each without admitting any liability, and to adjust and fully settle their rights and obligations in connection with the 2016 HELOC, 2016 Mortgage, Bankruptcy Case and

Adversary Proceeding.

**NOW THEREFORE**, in consideration of the covenants and agreements herein contained, and for other good and valid consideration, the receipt and sufficiency of which is acknowledged by each party, the Parties agree as follows:

1. <u>Incorporation of Recitals</u>. The recitals set forth above are hereby incorporated into and made a part of this Settlement Agreement.

2. <u>Approval of Proposed Settlement</u>. Within five (5) business days after full execution of this Settlement Agreement, Debtor shall file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Settlement Approval Motion**"), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement contemplated herein ("**Settlement Approval Order**").

3. <u>Payment of PNC's Claim.</u> Subject to approval of this Settlement Agreement by the Bankruptcy Court pursuant to Paragraph 2, the Parties agree to resolve the claims and disputes in the Bankruptcy Case and Adversary Proceeding as follows and as further set forth herein: Debtor shall pay PNC the sum of $525,000.00 (the "**Settlement Payment**") and upon receipt of the Settlement Payment, PNC shall deem the 2016 HELOC satisfied and release the 2016 Mortgage. The Settlement Payment shall be paid in two parts.

   i) *Terms.*
   
   a. *Secured Claim Payment:* Within twenty (20) days of the Settlement Approval Order, pursuant to the Settlement Approval Motion, Debtor shall pay or cause to be paid to PNC the sum of $483,247.95 in good and sufficient funds (the "**Secured Settlement Funds**"). The Secured Settlement Funds shall be made payable to "PNC Bank, N.A." addressed as follows:

   > PNC Bank, N.A.
   > c/o Jean Sexton
   > 8177 Washington Church Rd. (B6-YM13-01-U)
   > Miamisburg, Ohio 45342

   b. *Unsecured Claim Payment:* PNC shall have an unsecured claim in the Bankruptcy Case against the Bankruptcy Estate for $230,291.84, which will guarantee a payment of $41,752.05 from the unsecured creditors' pool of $250,000.00 (the "**Unsecured Settlement Funds**"). The Unsecured Settlement Funds shall be paid after confirmation of the plan and pursuant to the terms of the confirmed plan.

   c. *Savings Clause:* To the extent PNC does not receive $41,752.05 from the unsecured creditors pool, Debtor will have twenty (20) days to satisfy the difference in the $41,752.05 payment and the Unsecured Settlement Funds payment actually received. Failure to pay the difference within twenty days will result in a material breach of the Settlement Agreement. As a result of a breach for failure to pay the Unsecured Settlement Funds in accordance with

Page 2 of 6

the terms of the confirmed plan, the Parties agree that PNC's Claim, minus the Secured Settlement Funds payment, shall remain as a secured claim against the Property, secured by the 2016 Mortgage, until the difference is paid.

4. <u>Plan Incorporation</u>. Upon Court approval, the terms of this Agreement shall automatically be incorporated into Debtor's pending proposed Chapter 11 Plan and any future proposed and confirmed Chapter 11 Plan. The terms of this Agreement shall supersede any terms in the Plan related to PNC to the extent a conflict in terms exists.

5. <u>Non-Assignment of Claims</u>. Debtor represents and warrants that he maintains full and absolute control over the disposition and release of all claims belonging to Debtor which are being released, and that no such claim has ever been assigned or transferred.

6. <u>Releases</u>. Effective upon execution of this Settlement Agreement, Debtor releases and gives up any and all claims which Debtor (Debtor is the "Releasing Party") may have against PNC and all of its officers, directors, shareholders, partners, employees, attorneys, representatives, parents, subsidiaries, predecessors, successors, divisions and affiliates related to the 2016 Note, 2016 Mortgage, Claim, Property, Bankruptcy Case and Adversary Proceeding.

Debtor is bound by this Release. Anyone who succeeds to Debtor rights and responsibilities, or who claims by or through the Releasing Party's heirs, agents, or assigns, is also bound. This release is made for PNC's benefit and all who succeed to PNC's rights and responsibilities, and forever discharges PNC and all of its officers, directors, shareholders, partners, employees, attorneys, representatives, parents, subsidiaries, predecessors, successors, divisions and affiliates.

Likewise, effective upon execution of this Settlement Agreement and except as otherwise set forth in this Settlement Agreement, PNC provides this limited release of Debtor. PNC releases and gives up any and all claims which PNC (PNC is the "Releasing Party") may have against Debtor and all of its officers, directors, shareholders, partners, employees, attorneys, representatives, parents, subsidiaries, predecessors, successors, divisions and affiliates related to the 2016 Note, 2016 Mortgage, Claim, Property, Bankruptcy Case and Adversary Proceeding. For clarity, this release does not release any claims or rights PNC has other than those related to the 2016 Note, 2016 Mortgage, Claim, Property, Bankruptcy Case and Adversary Proceeding. Nothing in PNC's release shall preclude or be interpreted to preclude PNC from enforcing its rights under the Settlement Agreement including but not limited to the Settlement Payment under Paragraph 3 of the Settlement Agreement.

PNC is bound by this Release. Anyone who succeeds to PNC rights and responsibilities, or who claims by or through the Releasing Party's heirs, agents, or assigns, is also bound. This release is made for Debtor's benefit and all who succeed to Debtor's rights and responsibilities, and forever discharges Debtor and all of its officers, directors, shareholders, partners, employees, attorneys, representatives, parents, subsidiaries, predecessors, successors, divisions and affiliates.

8. **Dismissal of Adversary Proceeding.** Within ten (10) business days of the entry of the Settlement Approval Order, Debtor shall file a stipulation dismissing with prejudice the Adversary Proceeding if the Court has not already otherwise dismissed the Adversary Proceeding upon approval of this Agreement.

9. **Withdrawal of Objection.** Within ten (10) business days of the later of the entry of the Settlement Approval Order, Debtor shall withdraw his objection to the Claim if the Court has not already otherwise dismissed the Adversary Proceeding upon approval of this Agreement.

10. **Withdrawal of Objection to Amended Disclosures.** Within ten (10) business days or later of entry of the Settlement Approval Order, PNC shall withdraw its objection to the Amended Disclosures.

11. **Amendment of Claim.** Within (10) business days of PNC receiving the Secured Settlement Funds, subject to Paragraph 12, PNC shall amend its Claim to be a secured claim in the amount of $483,247.95 and an unsecured Claim in the amount of $41,752.05.

12. **Satisfaction of Mortgage.** Within 60 days of receipt of Settlement Funds, PNC will file a Release of Mortgage for the 2016 Mortgage.

13. **Governing Law and Forum to Resolve Further Disputes.** The Bankruptcy Court shall retain jurisdiction over the Parties for enforcement of this Settlement Agreement and any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issue relating to or concerning this Settlement Agreement. An action relating to, based upon, or arising from a breach of this Settlement Agreement shall be brought only in the Bankruptcy Court which shall retain jurisdiction over the subject matter and the Parties for this purpose.

This Settlement Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to its conflict of law principles.

14. **No Admissions.** The Parties acknowledge and agree that this Settlement Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly contingent upon and subject to the approval of the Bankruptcy Court. The Parties further acknowledge and agree that this Settlement Agreement will not and may not be used or construed as an admission of any liability or responsibility to any party or to any other persons.

15. **Parties to Bear Own Costs.** Each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Settlement Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Settlement Agreement.

16. <u>Advice of Counsel</u>. The Parties represent and acknowledge that in executing this Settlement Agreement they have had the opportunity to obtain the advice of legal counsel and do not rely and have not relied upon any representations or statements made by each other regarding the subject matter, basis or effect of this Settlement Agreement, or otherwise. The Parties acknowledge that the Settlement Agreement is executed voluntarily and without any duress or undue influence.

17. <u>Entire Agreement Between the Parties</u>. This Settlement Agreement and its exhibits shall constitute the entire agreement of the Parties with respect to their settlement, and shall supersede all prior oral or written agreements, understandings, representations, and warranties between the Parties as to the terms of the settlement. Each Party acknowledges and represents that in entering into this Settlement Agreement, it is not relying on any representations, by or on behalf of any other Party, not expressly set forth in this Settlement Agreement. This Settlement Agreement may not be terminated, modified, amended, or changed except by a writing signed by the Parties, and it may not be discharged except by performance in accordance with tis terms or by a writing signed by the Party to which performance is rendered.

18. <u>Binding Nature of Agreement; Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties' officers, directors, shareholders, employees, agents, parents, subsidiaries, general partners, limited partners, members, heirs, executors, administrators, affiliates, predecessors, successors, and assigns.

19. <u>Effective Date</u>. The Effective Date of this Settlement Agreement shall be the last date on which the Parties execute this Agreement.

20. <u>Execution of Agreement</u>. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. In addition, for purposes of executing this Settlement Agreement, a document signed and transmitted by email or facsimile machine shall be treated as an original document.

21. <u>Headings</u>. The headings contained in this Settlement Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation hereof.

22. <u>Enforcement of Terms.</u> Any waiver by any Party of a breach of any provision of this Settlement Agreement shall not operate as or be construed to be a waiver of any subsequent breach of such provision or of any breach of any other provision of this Settlement Agreement. Failure to insist upon strict compliance with any of the terms, covenants, or conditions of the Settlement Agreement shall not be deemed a waiver of any such term, covenant, or condition, nor shall such failure at any one time or more times be deemed a waiver or relinquishment of any other time or times of any right under the terms, covenants, or conditions of the Settlement Agreement.

23. <u>Survival of Agreement</u>. The provisions of this Settlement Agreement shall survive the execution and delivery hereof, and the consummation of the transactions contemplated hereby, and shall not be deemed to merge therein.

24. <u>Cooperation</u>. The Parties agree that, without receiving further consideration, they will sign and deliver such documents and do anything else that is reasonably necessary in the future to make the provision of this Settlement Agreement effective.

25. <u>Construction</u>. This Settlement Agreement shall be construed as if it were drafted by the Parties jointly, and shall not be construed against either party regardless of which party drafted any provision hereof.

26. <u>Severability.</u> If any provision or clause of this Settlement Agreement or the application thereof to any person or circumstance is determined by a court of competent jurisdiction to be invalid, void, or unenforceable, such provisions or clause shall be deemed amended to conform to applicable laws so as to be valid and enforceable so long as such amendment does not materially alter the intention of the Parties as expressed in this Settlement Agreement. If it does so materially alter such intention, such provision shall be stricken, and the remaining provisions hereof will remain in full force and effect and shall in no way be affected, impaired or invalidated thereby so long as all of the Parties agree that the Settlement Agreement shall remain in full force and effect.

27. <u>Persons Authorized to Sign on Behalf of Entity.</u> Each person signing this Settlement Agreement on behalf of any entity warrants and represents that they have the full and complete authority to enter into this Settlement Agreement on behalf of that entity.

28. <u>Notices</u>. All notices, demands and other communications to be given or delivered under, or by reason of, the provisions of this Settlement Agreement shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt), (b) upon sending (on the date sent if a business day, or if not sent on a business day, the first business day thereafter) if sent by facsimile or email (with electronic confirmation thereof), or (c) one (1) day after being sent by a nationally recognized overnight carrier to the addresses set for below (with confirmation of receipt):

    i.                          *If to Debtor*:

        Brian C. Thompson, Esquire
        Thompson Law Group, P.C.
        125 Warrendale Bayne Road, Suite 200
        Warrendale, PA 15086
        Telephone:   (724) 799-8404
        Facsimile:    (724) 799-8409
        bthompson@thompsonattorney.com

  ii.        *If to PNC Bank, N.A.:*

    John J. Berry, Esquire
    Dinsmore & Shohl LLP
    Six PPG Place, Suite 1300
    Pittsburgh, PA 15222
    Telephone: (412) 281-5000
    Facsimile: (412) 281-5055
    john.berry@dinsmore.com

The address to which notices are to be sent may be changed by any party by providing notice of the new address as provided herein.

29. <u>Failure to Approve</u>.  In the event that the Bankruptcy Court denies approval of this Settlement Agreement, then, and in that event, unless otherwise agreed by the Parties in writing, this Settlement Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Settlement Agreement.

30. <u>Plan Acceptance.</u>  PNC agrees to vote to accept Debtor's proposed Chapter 11 Plan, and any future proposed Chapter 11 Plan assuming said Plan fully incorporates this Agreement, as it relates to both its secured and unsecured claims.  Should PNC fail to return ballots voting to accept the proposed Chapter 11 Plan or any future proposed Chapter 11 Plan, this signed Agreement will be considered formal acceptance and deemed a valid substitute in the absence of receiving ballots.

To evidence the Parties' agreement to this Settlement Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**DEBTOR**

_____

Ronald G. Linaburg

Dated:_____

**PNC BANK, N.A.**

By:_____
E-SIGNED by William Hardrick on 2023-05-11 09:41:10 EDT
Name: William Hardrick
Title: Officer

Dated:_____

To evidence the Parties' agreement to this Settlement Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**DEBTOR**

_____
Ronald G. Linaburg

Dated: 4-25-2023

**PNC BANK, N.A.**

By:_____
   Name:
   Title:

Dated:_____